OPINION
{¶ 1} Defendant-appellant, Angela M. Ball, appeals the Judgment Entry of the Ashtabula County Court of Common Pleas, in which she was sentenced to a ten year term of imprisonment, restitution in the amount of $11,090.04, and a lifetime driver's license suspension. For the following reasons, we affirm the decision of the trial court. *Page 2 
 {¶ 2} Ball was charged with, and subsequently pled guilty to, one count of Aggravated Vehicular Homicide, a second degree felony, in violation of R.C. 2903.06(A)(1)(a), and one count of Failure to Comply, a third degree felony, in violation of R.C. 2921.331(B) and (c)(5)(a)(i). After accepting the plea, bond was set in the amount of $25,000 with conditions. One of the conditions was that Ball would be released in order for her to complete the "Turning Point" program at Lake Area Recovery Center. Ball was subsequently sentenced by the court to eight years imprisonment for the Aggravated Vehicular Homicide and two years imprisonment for Failure to Comply after a sentencing hearing.
 {¶ 3} Ball timely appeals and raises the following assignments of error:
 {¶ 4} "[1.] The court erred in considering or admitting the Exhibit A as it contained privileged information.
 {¶ 5} "[2.] Admission of the letter from Ana Canales and its consideration by the court prejudiced Ms. Ball's ability to have a fair consideration of the factors influencing the imposition of her sentence."
 {¶ 6} Ana Canales, the Director of Clinical Services at the Lake Area Recovery Center, wrote a letter to the trial court judge. The letter informed the judge of the "serious behavioral problems [Ball was having] in relating with her peers". Canales informed the judge that Ball "has been very angry and confrontive regarding trivial daily life issues that occur in a treatment center" and "[h]er attitude and disrespect has affected the group." The letter further communicated to the judge that the center planned on terminating Ball from the program because her actions demonstrated "absolute denial of her addiction" and she failed to show "progress in accepting *Page 3 
responsibly for addictive behavior and therefore *** there is no reason for her to stay in residential treatment." The letter was admitted into evidence by the State at Ball's sentencing hearing over the objection of her counsel.
 {¶ 7} Ball is arguing that Canales is "bound by the prescriptions of Section 2317.02, which creates a privilege in Ms. Ball that governs dissemination of information contained in the Turing Point records." Therefore, she disputes that the admission of the letter over counsel's objection was a violation of Evidence Rule 101(B).
 {¶ 8} Evidence Rule 101(C)(3) provides that the Ohio Rules of Evidence do not apply at sentencing hearings; however, Evidence Rule 101(B) states that "[t]he rule with respect to privileges applies at all stages of all actions, cases, and proceedings conducted under these rules." SeeState v. Cook, 83 Ohio St.3d 404, 425, 1998-Ohio-291. The statute regarding privileges provides that "a person licensed under Chapter 4757. of the Revised Code as a professional clinical counselor, professional counselor, social worker, independent social worker *** [shall not testify] concerning a confidential communication received from a client in that relation or the person's advice to a client". R.C. 2317.02(G)(1). Ana Canales is a licensed social worker and alcohol and drug addiction counselor.
 {¶ 9} The State asserts that the "letter at issue does not qualify as a privileged communication pursuant to R.C. 2317.02 *** [because it] does not contain confidential communication received from a client or advice given to a client." We agree.
 {¶ 10} Statutes providing for privileges "must be strictly construed."Weis v. Weis (1947), 147 Ohio St. 416, 428. R.C. 2317.02(G)(1) specifically states that the communication barred under privilege is communication "concerning a confidential *Page 4 
communication received from a client in that relation or the person's advice to a client." Canalas was acting as the Director of Clinical Services, terminating a patient from the program, not as Ball's counselor. The Ohio Supreme Court has held that "these statutes provide a privilege only for communications made to a professional[,] incident to a counselor-client or doctor-patient relationship." In re Jones,99 Ohio St.3d 203, 2003-Ohio-3182, at ¶ 22. The court has further held that in situations where "the physician is performing a forensic evaluation for the purpose of helping the court to determine the best course of action[,] *** no privilege attaches." Id. at ¶ 27.
 {¶ 11} Similarly, in the present case, the letter did not contain advice to Ball nor did it contain communications from a counselor to his/her client. The purpose of the letter was to inform the court that the treatment center was terminating Ball from their program and the reasons for the termination. Additionally, the letter requested that the court "direct whatever action necessary to have [Ball's] ankle monitoring devise installed so that [the center] can arrange to have [Ball's] parents pick her up at discharge." The letter did not contain confidential communications from a counselor to her client and therefore, was not subject to statutory privilege.
 {¶ 12} Alternatively, R.C. 2317.02(G)(1)(d) provides an exception when the client voluntarily testifies, which would be applicable in the present case if the letter was to be considered privileged information. Ball's counsel testified at her sentencing hearing that Ball "turned herself into Turning Point, our best rehabilitation in — — this area, to become an inpatient and treat for her alcohol addiction. She remained there for approximately, I believe it was fifty-three days". By providing this information to the trial court, Ball voluntarily put her treatment at Turning Point at issue. Therefore, even if the letter *Page 5 
contained privileged information, the State was entitled to rebut Ball's testimony under R.C. 2317.02(G)(1)(d).
 {¶ 13} Ball's first assignment of error is without merit.
 {¶ 14} In her second assignment of error, Ball claims that the admission of the letter prejudiced her ability to have a fair consideration of the factors influencing the imposition of her sentence.
 {¶ 15} R.C. 2929.19 authorizes the court to hold a sentencing hearing before imposing a sentence. It further provides that "[a]t the hearing, the offender, the prosecuting attorney, the victim or the victim's representative in accordance with section 2930.14 of the Revised Code, and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case." R.C. 2929.19(a). The letter, which was admissible as discussed above, was relevant to the instant case. The letter described Ball's unwillingness to seek treatment for her alcohol addiction and her problems with accepting responsibility for her addictive behavior.
 {¶ 16} The court considered evidence other than the letter at issue. The Judgment Entry of Sentencing noted that the "Court has considered the record, oral statements, any victim impact statement, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution." The court also reviewed Ball's Presentence Investigation Report (PSI), which contained information regarding Ball's criminal and mental health history, including her diagnosis of "alcohol dependence without physical dependence and post traumatic stress disorder." *Page 6 
 {¶ 17} The court also found that this was a serious offense and Ball "made a conscious decision to drive while she was impaired *** [and] flee from the police officer after being stopped". Further, the court took into consideration that Ball's reckless operation caused the death of another person. Additionally, the court noted her prior contacts with the criminal justice system.
 {¶ 18} At the hearing, the prosecutor testified to Ball's "long history of alcohol-related incidents with respect to Children's Services." He relayed to the court Ball's tendency of "driving her vehicle intoxicated with *** her own children inside of it." Further, the prosecutor informed the court of an incident where Ball hit her own child with her car, crushing the child's pelvis. Additionally, testimony was presented indicating Ball's children had called 911 several times because of their mother's intoxication.
 {¶ 19} The judge stated that he thought the facts of the case were "particularly aggravated" in that Ball was stopped by an officer for speeding and as the officer approached, she fled the scene and two-tenths of a mile later hit and killed Mr. Turner and his dog. In addition, Ball was under the influence at the time of the accident and combative at the scene. The judge found that all the "factors taken together, in [his] mind, make this among the most aggravated cases of this nature."
 {¶ 20} Thus, there were many factors that played a role in the sentencing of Ball. The letter was relevant to the instant case, demonstrating that Ball was not willing to get treatment for her addiction, and the court clearly considered other factors in Ball's sentencing. It cannot be said that she was prejudiced as a result of the admission of the letter. *Page 7 
 {¶ 21} Ball's second assignment of error is without merit.
 {¶ 22} For the foregoing reasons, the Judgment Entry of the Ashtabula County Court of Common Pleas, sentencing Ball to a ten year term of imprisonment, is affirmed. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.