[Cite as *State v. Caraballo*, 2012-Ohio-5725.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97915**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## VIRGEN CARABALLO

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-551566

**BEFORE:**   Rocco, J., Sweeney, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   December 6, 2012

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:  Katherine Mullin
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Virgen Caraballo appeals from her convictions and the consecutive sentences imposed after she pleaded guilty in the Cuyahoga County Court of Common Pleas to seven counts of patient abuse in violation of R.C. 2903.34(A)(1).

{¶2} Caraballo presents five assignments of error.  She claims the trial court failed to provide clear information during her plea hearing concerning the maximum penalties involved, thus, the court should not have accepted her pleas.  She also claims the trial court abused its discretion in failing to

grant her a continuance of her sentencing hearing and in determining that the presentence investigation report was inaccurate with respect to the issue of whether the victim suffered physical harm. She asserts the trial court did not act in an impartial manner in sentencing her, and further asserts that the maximum and consecutive sentences imposed are disproportionate to the sentences imposed on other similarly situated offenders.

{¶3} Because a review of the record does not support Caraballo's arguments, her assignments of error are overruled. Caraballo's convictions and sentences are affirmed.

{¶4} Caraballo was originally indicted in this case in July 2011 on 13 counts of patient abuse. Each count named the same victim, and the counts included a range of dates for the offenses beginning on April 8, 2011, until May 15, 2011.

{¶5} After several pretrial hearings, the parties notified the trial court that a plea agreement had been reached. The plea hearing took place on December 1, 2011.

{¶6} As outlined by the prosecutor, in exchange for Caraballo's guilty pleas to seven separate counts and her agreement to relinquish her state-tested nursing assistant license, the state would dismiss the other six counts. The prosecutor noted that, pursuant to the new sentencing provisions in effect, Caraballo was "eligible for mandatory probation if in fact

requirements are met," but, "the Court may impose a prison term pursuant to [R.C.] 2929.13(B)(1)(c) and (B)(1)(b) if certain conditions or requirements are met.

* * * "

{¶7} After these representations, the trial court conducted a careful colloquy. The court noted that the potential penalties included:

> a *possible* period of incarceration. You are *eligible for mandatory probation*, but I don't know what [the court] will do, but you *could* receive anywhere between six and twelve months — I should say six and eighteen months on any one of these counts.
> (Emphasis added.)

{¶8} Caraballo answered, "Yes," when the trial court asked her if she understood. The court also informed her that, if she were sent to prison, Caraballo "might be subject to * * * post-release control * * * for a period up to three years." The court described the possible consequences should she violate postrelease control, satisfied itself that Caraballo had no questions, then asked for her pleas. Caraballo entered guilty pleas. The trial court referred her for a presentence investigation report and set January 9, 2012, as the date for the sentencing hearing.

{¶9} The record reflects both the prosecutor and defense counsel filed sentencing memoranda on January 6, 2012. When Caraballo's case was called for sentencing, her attorney requested a continuance. Defense counsel informed the trial court that he had received the state's sentencing

memorandum only the night before and, at that time, discovered the state attached an expert report.

{¶10} Prior to deciding the issue, the trial court listened to arguments from both the prosecutor and defense counsel. The court then denied defense counsel's motion to continue the sentencing hearing, but struck the expert's report from the state's brief.

{¶11} The prosecutor proceeded to recommend that the trial court impose a prison term on Caraballo for her convictions. The prosecutor asserted that Caraballo inflicted physical harm on the victim and supported this position by displaying a video that showed the basis for the charges that had been brought against Caraballo.

{¶12} The trial court subsequently heard from the victim's son, who told the court that his suspicions about the care his mother received at the nursing facility had been aroused when he observed bruises on her body. Over defense counsel's objection, the victim's son produced a photograph that depicted a contusion on the victim's left cheek.

{¶13} When Caraballo addressed the trial court, her first comments included the declaration that the situation had been "very hard for [her]," and that the victim "fought all the time." Caraballo could not explain why the video showed no such action on the victim's part.

{¶14} The trial court described for the record some of Caraballo's behaviors as demonstrated on the video. The court then stated that, although Caraballo's defense counsel requested probation, persons who treated infirm people in such a manner needed to be "disciplined."

{¶15} The trial court continued,

> This Court is satisfied that based upon what the Court viewed in the video, which was [the victim] being thrown, being roughly handled, being pushed in the face, being turned upside-down, being thrown into a corner, sheets being pulled from underneath her, being thrown to the side, * * * that [the bruise] could have resulted from the physical harm that was caused to her * * * .

{¶16} The trial court found that Caraballo physically harmed the victim, that Caraballo's actions constituted "some of the worst conduct" that the court had seen, that consecutive sentences were necessary to protect the public from future crimes and to punish the offender, that Caraballo's actions occurred as a course of continuous criminal conduct, and that prison terms were "not disproportionate to the seriousness of defendant's conduct and to the danger that the offender poses to the public." After stating these findings, the trial court imposed consecutive terms of eighteen months on each count.

{¶17} Caraballo presents the following five assignments of error in this appeal.

> I. The trial court did not comply with Crim.R. 11 and Defendant's plea was not knowingly, intelligently, and voluntarily made.

II.   The trial court erred and/or abused its discretion in refusing to grant a continuance so that defense counsel could rebut the state's sentencing memorandum and/or argument of physical harm.

III.   The trial court erred and/or abused its discretion in overruling the pre-sentence investigation report and finding physical harm was involved in this case.

IV.   The Defendant was denied a fair sentencing hearing resulting in a violation of her due process rights.

V.   The trial court erred in imposing a term of incarceration that is not proportionate to similarly situated offenders.

{¶18} In her first assignment of error, Caraballo claims that the trial court violated Crim.R. 11(C) at her plea hearing.  She argues that using the word "mandatory" in informing her that she might be eligible to receive community control sanctions rather than prison was so "confusing" as to render her plea invalid.  She further argues, without citation to any authority, that the trial court neglected to describe all "the additional penalties and options available for the Adult Parole Authority" when discussing postrelease control at the plea hearing.  Upon a review of the record, this court finds that her arguments lack merit.

{¶19} Pursuant to Crim.R. 11(C), a trial court must make certain advisements prior to accepting a defendant's guilty plea in order to ensure that the plea is knowing, intelligent, and voluntary.  *State v. Engle*, 74 Ohio St.3d 525, 660 N.E.2d 450 (1996).  These advisements are divided into

constitutional rights and nonconstitutional rights. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51.

{¶20} The constitutional rights are: (1) a jury trial; (2) confrontation of witnesses; (3) compulsory process; (4) proof of the defendant's guilt by the state beyond a reasonable doubt at trial; and (5) the right against self-incrimination. Crim.R. 11(C)(2)(c); *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19-21. Because the trial court must strictly comply with these requirements, if it fails, the defendant's guilty plea is invalid. *Veney* at ¶ 31; *State v. Ballard*, 66 Ohio St.2d 473, 477, 423 N.E.2d 115 (1981).

{¶21} The nonconstitutional rights of which the defendant must be informed are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on postrelease control; (3) if applicable, that the defendant is *not* eligible for the imposition of community control sanctions; and (4) that the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10-13; *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 19-26.

{¶22} The trial court must substantially comply with the mandates of Crim.R. 11 with respect to nonconstitutional rights. *Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, at ¶ 12, citing *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474 (1990). "Substantial compliance means that under the

totality of the circumstances the defendant subjectively understands the implications of [her] plea and the rights [s]he is waiving." *Veney* at ¶ 15, quoting *Nero* at 108. A defendant who challenges her guilty plea on the basis that the trial court's advisement of nonconstitutional rights was not in substantial compliance with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, i.e., that the plea would not have been entered. *Veney* at ¶ 15, citing *Nero* at 108.

{¶23} R.C. 2929.13, as amended by H.B. 86, sets forth the penalties for fourth and fifth degree felonies, and provides in relevant part as follows:

> (B)(1)(a) *Except as provided in division (B)(1)(b)* of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence, the court *shall* sentence the offender *to a community control sanction* of at least one year's duration if *all* of the following apply:

> (i) The offender previously has not been convicted of or pleaded guilty to a felony offense or to an offense of violence that is a misdemeanor and that the offender committed within two years prior to the offense for which sentence is being imposed.

> (ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

> (iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(b) The court has *discretion* to impose *a prison term* upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence if *any* of the following apply:

(i) The offender committed the offense while having a firearm on or about the offender's person or under the offender's control.

(ii) The offender *caused physical harm* to another person while committing the offense. * * *

* * *

(2)   If division (B)(1) of this section does not apply, except as provided in division (B)(3), (E)[pertaining to drug offenses], (F)[pertaining to certain listed offenses], or (G)[pertaining to OVI offenses] of this section, in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:

(a)   In committing the offense, the offender caused physical harm to a person.

* * *

(3)(a)   If the court makes a finding described in division (B)(2)(a), * * * of this section *and* if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code *and* finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender.

(b) Except as provided in division (E), (F), or (G) of this section, if the court does not make a finding described in division (B)(2)(a) * * * of this section *and* if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a community control sanction or combination of community control sanctions is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code, the court shall impose a community control sanction or combination of community control sanctions upon the offender.   (Emphasis added.)[1]

---

[1] Given the morass that constitutes R.C. 2929.13, as amended by H.B. 86, it is no surprise

{¶24} Caraballo was charged with patient abuse in violation of R.C. 2903.34(A)(1). According to R.C. 2903.34(A)(1), an employee of a nursing facility shall not "[c]ommit abuse against a resident or patient of the facility * * * ." In R.C. 2903.33(B), "abuse" is defined as "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person * * * ." R.C. 2901.01(A)(9) defines an "offense of violence" to mean, in pertinent part, "an offense, other than a traffic offense, * * * *committed purposely or knowingly, and involving physical harm to persons* or a risk of serious physical harm to persons * * * ." (Emphasis added.)

{¶25} Because R.C. 2929.13(B) was the only section of the sentencing statutes that applied to R.C. 2903.34(A)(1), neither community control sanctions nor a prison sentence was "mandatory" for Caraballo's crimes. *Compare State v. Dunn*, 9th Dist. No. 13093, 1987 Ohio App. LEXIS 9074 (Oct. 7, 1987). The use of the term "mandatory" by the prosecutor and the trial court in informing Caraballo about the possibility of the imposition of community control sanctions was, therefore, inartful at best.

{¶26} However, in context, all the information Caraballo received at the plea hearing concerning the potential penalties she faced upon entering guilty

that there appeared to be some initial confusion during the plea and sentencing hearings as to what potential penalties applied to Caraballo's offenses. Clarification of R.C. 2929.13 by the legislature would be helpful to ensure its proper application in future cases.

pleas was conditional; thus, there was "partial compliance" with Crim.R. 11(C). *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32. Caraballo neither asked any questions nor indicated she had any confusion about the possibility that she could receive a prison sentence. The record also reflects that the trial court provided Caraballo with an adequate explanation of applicable postrelease control requirements. *State v. Poole*, 8th Dist. No. 96921, 2012-Ohio-2622, ¶ 11. Furthermore, Caraballo obtained the dismissal of nearly half of the charges by entering her guilty pleas.

**{¶27}** Under these circumstances, the totality of circumstances supports a conclusion that Caraballo subjectively understood the consequences of entering her guilty pleas, and, further, that Caraballo cannot demonstrate that she would not have entered her pleas if the word "mandatory" had not been used by the trial court. *State v. Anderson*, 8th Dist. No. 92576, 2010-Ohio-2085; *compare State v. Hollobaugh*, 5th Dist. No. 11-AP-0006, 2012-Ohio-2620; *State v. Bryant*, 4th Dist. No. 11CA19, 2012-Ohio-3189; *State v. Farley*, 1st Dist. No. C-0100478, 2002-Ohio-1142. Her first assignment of error, consequently, is overruled.[2]

---

[2] Caraballo was represented by counsel during the plea negotiations and at the plea and sentencing hearings. As this court has previously stated, "[a] defendant has a right to effective assistance of counsel in considering plea offers and * * * is entitled to accurate information allowing [her] to compare the plea offer with the outstanding charges." *State v. Jeffries*, 8th Dist. No. 78070, 2001 Ohio App. LEXIS 2875, at *7 (June 28, 2001); *see also State v. Simmons*, 8th Dist. No. 91062, 2009-Ohio-2028, ¶ 27 ("A guilty plea is not voluntary if it is the result of

{¶28} Caraballo argues in her second assignment of error that the trial court should have granted her motion for a continuance of the sentencing hearing. She contends her defense to the allegations the state made in its sentencing memorandum was compromised because she did not receive the memorandum in a timely manner.

{¶29} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. [Therefore, an] appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *State v. Bayless*, 48 Ohio St.2d 73, 101, 357 N.E.2d 1035 (1976). An abuse of discretion "implies that the court's attitude is

ineffective assistance of counsel"), citing *State v. Masterson*, 8th Dist. No. 90505, 2008-Ohio-4704. It is impossible to determine from the trial court record what Caraballo's counsel told her, prior to her guilty pleas, regarding the maximum sentence she could receive for the seven counts of patient abuse to which she pled guilty. If Caraballo's counsel improperly advised Caraballo that the court was required to impose a mandatory community control sanction and did not inform her that she could be sentenced to a possible prison term of six to eighteen months on each count, Caraballo could have a viable claim for ineffective assistance of counsel. *See, e.g., Jeffries* at *7-8 (when accompanied by prejudice, defense counsel's failure to properly inform defendant of potential penalties in connection with a plea offer could support a claim for ineffective assistance of counsel); *State v. Bray*, 7th Dist. No. 04 MA 27, 2005-Ohio-2117, ¶ 40-44 (assistance of counsel may have been ineffective where defense counsel failed to inform defendant of potential complicity conviction during plea negotiations). Because it would require evidence outside the trial court record, any such claim should be raised in a petition for postconviction relief. *See, e.g., State v. Reed*, 8th Dist. No. 91767, 2009-Ohio-2264, ¶ 33.

unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶30} The Ohio Supreme Court has stated that the following facts can be considered when determining whether the trial court should have granted a motion for a continuance: "the length of delay requested, prior continuances, inconvenience, the *reasons* for the delay, whether the defendant contributed to the delay, and *other relevant factors*." *State v. Landrum*, 53 Ohio St.3d 107, 115, 559 N.E.2d 710 (1990) (Emphasis added.)

{¶31} The record in this case reveals that the reason defense counsel gave as the basis for the motion was the fact that the state had attached the report of a previously undisclosed expert to its sentencing memorandum. The trial court thereupon permitted defense counsel time to review the expert's report.

{¶32} Afterward, defense counsel requested the trial court to strike from the state's sentencing memorandum any and all references to the expert's report. The trial court granted this request, thus rendering Caraballo's motion for a continuance moot. The trial court further informed the parties that it would not rely on the sentencing memoranda. The transcript of the sentencing hearing demonstrates defense counsel was

satisfied with this result and made no further reference to any need for a continuance. Under these circumstances, no abuse of discretion occurred.

{¶33} Accordingly, Caraballo's second assignment of error is overruled.

{¶34} In her third assignment of error, Caraballo argues that the trial court acted improperly in rejecting one of the conclusions set forth in the presentence investigation report, viz., that the victim incurred "no physical harm." Caraballo also claims that, in concluding otherwise, the trial court relied upon improper evidence, viz., the photograph produced by the victim's son.

{¶35} At the time of Caraballo's sentencing hearing, R.C. 2929.19 stated in relevant part:

> (A) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony * * *. At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative in accordance with section 2930.14 of the Revised Code * * * may present information relevant to the imposition of sentence in the case. * * *

> (B) (1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the presentence investigation report made pursuant to section 2951.03 of the Revised Code or Criminal Rule 32.2, and any victim impact statement made pursuant to section 2947.051 of the Revised Code.

**{¶36}** Notably, the statute requires the trial court to "consider" the presentence report, not to accept all of it as true. *State v. Mayor*, 7th Dist. No 07 MA 177, 2008-Ohio-7011. As previously stated, Caraballo pleaded guilty to seven counts of patient abuse, and "abuse" is, by definition, the causing of "physical harm" to the victim. R.C. 2903.33(B). The trial court did not act improperly, therefore, in coming to the conclusion that the presentence investigation report was not entirely accurate in this respect.

**{¶37}** In any event, the record of the sentencing hearing demonstrates that the state introduced into evidence a video that depicted some of the treatment the victim received at Caraballo's hands. Based upon this evidence, the court concluded that the victim certainly sustained some physical harm. *State v. Witt*, 8th Dist. No. 94800, 2011-Ohio-336. In light of the video and all the other factors the trial court considered, if the introduction of the photograph as evidence of physical harm was error at all, it constituted harmless error. *State v. Ball*, 11th Dist. No. 2009-A-0054, 2009-Ohio-999.

**{¶38}** Caraballo's third assignment of error is overruled.

**{¶39}** Caraballo argues in her fourth and fifth assignments of error that the trial court's conduct and comments during the sentencing hearing demonstrate the proceeding was so unfair as to deny Caraballo her right to due process of law. She supports this argument by claiming that the court's ultimate decision to impose maximum and consecutive terms for her convictions constitutes disproportionate punishment.

**{¶40}** Recently, in *State v. Balta*, 8th Dist. No. 97755, 2012-Ohio-3462, ¶ 7, this court noted the following as the appropriate standard of review of a felony sentence:

> Appellate courts must first "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." [*State v.*] *Kalish*, [120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124] at ¶ 4. If this first prong is satisfied, then we review the trial court's decision under an abuse-of-discretion standard. *Id.* To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 5 Ohio B. 481, 450 N.E.2d 1140 (1983).

**{¶41}** As in *Balta*, Caraballo must acknowledge that the trial court complied with all applicable rules and statutes in imposing sentence in this case. The trial court considered the presentence investigation report, the circumstances surrounding Caraballo's convictions, the video, and Caraballo's statement in her own behalf; Caraballo essentially blamed the 78-year-old victim, who suffered from dementia, for being insufficiently cooperative. The sentence imposed for each of Caraballo's convictions was within the statutory limits. In addition, the trial court made the necessary findings to impose consecutive terms. *Id.* at ¶ 8-11.

**{¶42}** Caraballo failed to raise the issue of proportionality in the trial court. Thus, neither the trial court nor this court has any "starting point for analysis" of her assertion on appeal that her total sentence did not comply

with R.C. 2929.11(B), and she waived the issue for appellate review. *State v. Cooper,* 8th Dist. No. 93308, 2010-Ohio-1983, ¶ 24.

**{¶43}** The record reflects that, in explaining her reasoning process in deciding the appropriate sentences to impose, the trial judge referred to the fact that the victim's age was approximately her own. The judge indicated that this fact made her much more aware of the seriousness of Caraballo's crimes. Although Caraballo argues the trial court's reference was improper, the Ohio Supreme Court addressed a similar argument in *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000), as follows:

> This court has held that the individual decisionmaker has the discretion to determine the weight to assign a particular statutory factor. *State v. Fox* (1994), 69 Ohio St.3d 183, 193, 631 N.E.2d 124, 132, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 376, 582 N.E.2d 972, 978. A discretionary decision necessitates the exercise of personal judgment, and we have determined that when making such judgments, the sentencing court "is not required to divorce itself from all personal experiences and make [its] decision in a vacuum." *State v. Cook* (1992), 65 Ohio St.3d 516, 529, 605 N.E.2d 70, 84, citing *Barclay v. Florida* (1983), 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134. For this reason, we have previously permitted a judge in a death-penalty case to refer, during sentencing, to a personal friend of his who was murdered. *Id.*

**{¶44}** The record of this case reflects Caraballo committed her crimes while in a position of trust. Caraballo abused the helpless victim over a period of time. Moreover, Caraballo made affirmative efforts to conceal her actions, so she could continue her abuse without detection. *Balta,* 8th Dist. No. 97755, 2012-Ohio-3462. Finally, when

brought to account for her actions, Caraballo displayed insincere remorse, blaming the victim for being insufficiently cooperative with Caraballo's "care."

**{¶45}** A review of the entire sentencing hearing that took place in this case, therefore, fails to demonstrate that the trial court conducted itself in an unfair manner. Accordingly, Caraballo's fourth and fifth assignments of error are overruled.

**{¶46}** Caraballo's convictions and sentences are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentences.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS
(SEE ATTACHED OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶47} I do not fault the trial judge, the prosecutor, defense counsel, or Caraballo for the confusion raised by this case. The responsibility rests with the legislature that chose to amend a statute to include the term "mandatory probation" when in fact a finding of "physical harm" precludes such an outcome. The fact that we would tell someone that she is eligible for "mandatory probation" but also tell her that she can be sent to prison does not lend clarity to the plea and sentencing process. The resulting confusion makes the plea suspect. For these reasons, I respectfully dissent.