DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Gerald Riley, was convicted of aggravated burglary, a violation of R.C. 2911.11(A)(1) and a felony of the first degree, after a jury trial in the Wood County Court of Common Pleas. We dismissed appellant's initial appeal as of right due to his appellate counsel's failure to file a merit brief; we then granted his application to reopen his appeal pursuant to App.R. 26(B) and State v. Murnahan (1992), *Page 2 
63 Ohio St.3d 60. State v. Riley, 6th Dist. No. WD-03-076, 2006-Ohio-116. Having reviewed the entire record, we affirm in part and reverse in part.
 {¶ 2} The following facts are relevant to this appeal. On July 9, 2003, Juan and Terry Delgado, husband and wife, were awoken from sleep by loud pounding on their front door. Before they were fully awake, the front door was kicked open. Four masked men entered their mobile home yelling, "police" and warning the Delgados to stay down. The Delgados were pulled from bed, made to lie on the hall floor, and were partially covered by a bed sheet. The men beat and kicked Juan Delgado and threatened to kill Terry Delgado; they demanded money and a safe they apparently thought was in the home. The Delgados directed the men to their wallet and purse; unsatisfied, the men continued to threaten and beat them. The men took Terry's wedding rings and other miscellaneous items; they dumped the wallet and other items into a pillowcase taken from the bed.
 {¶ 3} Meanwhile, a man walking past the Delgados mobile home called 911 when he saw several men break in the Delgados' door and yell "police." At trial, he was ruled unavailable as a witness and a tape of his 911 call was played for the jury. In the call, he reported, "I'm telling you ma'am, they're doing something to that lady. I can hear." When the dispatcher asked the witness to read the car's license plate, the witness responded that he was too afraid to get closer to look, but he described the car as a champagne colored Cadillac. *Page 3 
 {¶ 4} Inside the residence, the men's faces were covered by masks. One man's mask slipped off briefly, and Terry later identified him as appellant's co-defendant. However, they were unable to say they saw appellant inside the residence. Juan was able to describe one man as wearing tennis shoes and shorts. After the men left, the Delgados quickly dressed and drove out of their garage seeking help. Just past their driveway, they encountered the officer responding to the emergency call.
 {¶ 5} The officer arrived approximately four to five minutes after the 911 call. The witness who called 911 reported to the officer at the scene that four men left the mobile home and drove away in a champagne colored Cadillac. When the officers initially spoke to the Delgados, they reported that the men were wearing white masks and all carried handguns; later, after leaving the hospital, they described the masks as black.
 {¶ 6} Sergeant Otte was patrolling the area nearby when he heard the initial dispatch report of a burglary in process. He then observed two cars, a champagne colored Cadillac and an Oldsmobile, pull onto the main road, leaving the area of the burglary. He decided to follow the Cadillac, and a few minutes later heard the dispatch report that the witness saw a Cadillac leave the scene. He followed the Cadillac onto the interstate highway, activated his overhead lights to effect a stop, and requested more officers. When the Cadillac pulled over, two men immediately jumped from the passenger side and ran down the highway embankment. The Cadillac drove away quickly, and Otte followed. When the car pulled over again approximately one mile later, there was only one man, the driver, in the car. Otte identified him as appellant. He *Page 4 
was wearing shorts, a dark-colored T-shirt, and tennis shoes. The two men who fled on foot were later apprehended by other officers and prosecuted as co-defendants, including the man who Terry later identified as having been inside her residence.
 {¶ 7} Officers impounded and inventoried the Cadillac. The items retrieved included Juan Delgado's wallet and identification, Juan Delgado's credit card, a pillow case which Terry Delgado identified as hers, a black mask and black gloves, and a cellular phone. Fingerprints lifted from the car were later matched with appellant's fingerprints. Officers later searching the area surrounding the highway found a cellular phone and cord, latex gloves, a bandana, and a loaded handgun near where the men fled.
 {¶ 8} The black mask and black gloves retrieved from the Cadillac were submitted for DNA testing. Julie Cox, a forensic scientist with the Bureau of Criminal Identification and Investigation, was recognized as an expert in the field of DNA analysis without objection from appellant's counsel. She was able to extract DNA samples from both the mask and the gloves, and compared them to DNA samples taken from appellant, two co-defendants, and the Delgados. As to the glove sample, she determined appellant was the "major contributor" to the partial profile she was able to obtain; as she explained, at least one other person besides appellant wore the gloves, and more "signals" matched appellant's DNA as opposed to the other DNA. Similarly, only a partial profile was extracted from the mask, and appellant "could not be excluded as a contributor" to the sample. She could not, however, positively identify him as a major or minor contributor. As to the gloves, however, there was greater than a one in 500,000 chance that someone *Page 5 
other than appellant was the major contributor to the DNA sample. Appellant's two co-defendants were excluded as contributors to any of the found DNA. Appellant's counsel did not object to any portion of her testimony.
 {¶ 9} The jury found appellant guilty; the matter proceeded immediately to sentencing. He was sentenced by the Wood County Court of Common Pleas to ten years in prison, the maximum sentence for the offense, and ordered to pay $15,000 in restitution.
 {¶ 10} Appellant presents seven assignments of error for review:
 {¶ 11} "Assignment of Error I: Gerald Riley's right to confrontation was violated when the trial court allowed the State to introduce testimonial hearsay statements through the playing of a 911 call recording and the testimony of a police officer as to his later conversation with the 911 caller.
 {¶ 12} "Assignment of Error II: The trial court imposed a non-minimum, maximum prison sentence on the basis of findings made by the trial court pursuant to an unconstitutional statutory felony sentencing scheme.
 {¶ 13} "Assignment of Error III: Gerald Riley was denied his state and federal constitutional rights to due process and a fair trial when the trial court entered a judgment of conviction against him for aggravated burglary in the absence of sufficient evidence to support the conviction. *Page 6 
 {¶ 14} "Assignment of Error IV: Gerald Riley's conviction must be reversed and his case remanded for a new trial because his conviction is against the manifest weight of the evidence.
 {¶ 15} "Assignment of Error V: Gerald Riley was denied his state and federal constitutional rights to due process and a fair trial when the trial court allowed the admission of incompetent and irrelevant opinion evidence by certain state's witnesses and when the trial court allowed the admission of irrelevant physical evidence.
 {¶ 16} "Assignment of Error VI: Gerald Riley was denied the effective assistance of counsel.
 {¶ 17} "Assignment of Error VII: The trial court's order of restitution was unsupported by any competent, credible evidence and its imposition upon Gerald Riley was contrary to law." (Internal citations omitted.)
 {¶ 18} We first address the errors raised with respect to evidence admitted at trial. Appellant argues that admission of Oviedo's emergency telephone call recording and admission of Oviedo's statements to police upon the scene violated his Sixth Amendment right of confrontation. InCrawford v. Washington (2004), 541 U.S. 36, the Supreme Court held that the Sixth Amendment's Confrontation Clause forbids the admission of testimonial statements unless the witness is unavailable and the defendant had a prior opportunity to cross-examination. Because Ovideo's emergency telephone call was testimonial, appellant argues, it should not have been admitted because he had not been afforded an opportunity for cross-examination. In support, appellant cites United States *Page 7 v. Cromer (C.A. 6, 2005), 389 F.3d 662, for the rule that statements describing criminal activity, knowingly made to authorities, are testimonial because the declarant may expect the statement to be used in a later prosecution.
 {¶ 19} Appellant's argument fails because Oviedo's telephone call to 911 operators was non-testimonial and, therefore, not subject to the bar of the Confrontation Clause. In Davis v. Washington (2006),126 S.Ct. 2266, the United States Supreme Court clarified Crawford and, without producing a classification of testimonial statements, held that "[statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 2273-2274. By contrast, Cromer merely examined examples of testimonial statements which Crawford listed in dicta to hold that a confidential informant's statements to police were testimonial; Cromer rejected the prosecution's blanket argument that would label non-testimonial any statement to police regarding the identity of a perpetrator during an investigation. Davis, moreover, carved out emergency telephone calls as an exception to the argument Cromer rejected; the purpose of an emergency telephone call is to assist in an ongoing emergency and the declarant does not speak to an emergency dispatcher with the purpose of testifying for a later prosecution. *Page 8 
 {¶ 20} Clearly, Ovideo's emergency telephone call was made solely to assist police in an emergency of the moment — to alert law enforcement that he witnessed a crime in process. He told the dispatcher to hurry because he could hear sounds of distress from inside the Delgados' residence, and he was afraid get closer to look at the Cadillac's license plate. Ovideo's statements in the telephone call were non-testimonial; therefore, our inquiry ends without application of the Confrontation Clause.
 {¶ 21} Ovideo's statements to police at the scene were properly admitted for the same reasons. We have recently held that when police arrive upon a scene shortly after and in response to an emergency telephone call, statements made to police officers by witnesses with the purpose of securing the scene or apprehending fleeing suspects are non-testimonial. State v. Reardon (2006), 168 Ohio App.3d 386,2006-Ohio-3984. When police, upon their arrival at a crime scene, are notified that suspects have just fled and are given a description to aid in their apprehension, the emergency is "ongoing," especially when, as here, the statements were made minutes after officers responded to the 911 call. Such non-testimonial statements are not subject to the Confrontation Clause's bar. The Crawford decision wisely declined to categorize such statements because the circumstances and chronology of events may render such witness statements to police testimonial when the emergency is no longer ongoing and when the witness may reasonably expect his statements to be used in prosecution. See State v. Byrd,160 Ohio App.3d 538, 543, 2005-Ohio-1902. Because the trial court properly admitted both sets of Ovideo's statements, appellant's first assignment of error is not well-taken. *Page 9 
 {¶ 22} Next, we address the evidentiary issues raised in appellant's fifth assignment of error. Appellant points to three pieces of evidence as admitted in error and to appellant's prejudice: the DNA evidence taken from the mask and gloves found in the Cadillac; the gun; and the testimony regarding the operability of the gun.
 {¶ 23} Officers testified that they found the gun on the ground next to a pair of latex gloves in the general area into which the co-defendants ran on foot. It was found loaded, without a bullet in the chamber; it was test fired and found operable. Appellant did not object to admission of this evidence at trial. Appellant argues that admission of the gun and testimony regarding its operability is irrelevant; first, he was charged with aggravated burglary committed while the offender "inflicts, or attempts or threatens to inflict physical harm on another," R.C. 2911.11(A)(1), without a gun specification; second, no evidence connected him to the gun.
 {¶ 24} Appellant waived all but plain error for his failure to object at trial. Evid.R. 103. Notice of plain error is taken to prevent a miscarriage of justice, under exceptional circumstances. State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. A plain error is an error which affects a substantial right of the accused and without the error, the outcome of the trial would have been different.State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 82.
 {¶ 25} As appellant concedes, since the gun was unconnected to him, and since it was irrelevant to the infliction of harm upon the Delgados, the result of the trial would not have been different had the gun and testimony of its operability been excluded. *Page 10 
Although appellant argues its admission worked to his prejudice, the other evidence connecting him to the burglary overcomes any prejudice that admission of the gun may have injected into the proceeding. See discussion regarding manifest weight of the evidence, infra. No plain error occurred from admission of the gun and the operability testimony.
 {¶ 26} As to the expert witness' testimony concerning the DNA, appellant has also waived all but plain error. Appellant argues that Cox's testimony as to whether appellant actually wore the mask was incompetent because she did not state her conclusion to a "reasonable degree of scientific certainty." In support, appellant cites State v.Buell (1986), 22 Ohio St.3d 124, and State v. Benner (1988),40 Ohio St.3d 301.
 {¶ 27} Both cases appellant cites were decided before the 1994 amendments to Evid.R. 702. As in Buell and Benner, before the amendment, "[questions regarding the reliability of DNA evidence in a given case go to the weight of the evidence rather than to its admissibility."State v. Pierce (1992), 64 Ohio St.3d 490, paragraph two of the syllabus. Subsequent to Pierce, Evid.R. 702 was amended to require that expert testimony be "reliable" before it is deemed admissible. "Reliable" evidence must be based on an objectively verifiable theory, reliably implemented by a procedure, test, or experiment, conducted in a way that will yield accurate results. Evid.R. 702(C). Questions of reliability are not to be directed at the "correctness or credibility of the conclusions themselves." State v. Conway, 108 Ohio St.3d 214,2006-Ohio-791, ¶ 121, certiorari denied, 127 S.Ct. 122, citing Evid.R. 702's Staff Note. "Relevant evidence *Page 11 
based on valid principles will satisfy the threshold reliability standard for admission of expert testimony." Id., quoting State v.Nemeth (1998), 82 Ohio St.3d 202, 211.
 {¶ 28} In State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, the court examined the effect of the rule's amendment on DNA evidence, and concluded that questions raised about, inter alia, "coincidental match probabilities and false error rates" of the DNA testing, "go to the weight of the evidence rather than its admissibility." Id. at ¶ 81-82, quoting State v. Pierce, supra at paragraph two of the syllabus. We agree with appellant that since the mask was "unquestionably retrieved from an automobile that Mr. Riley was driving," the "mere presence of the mask in the car with Mr. Riley could explain the presence of his DNA on the mask — if in fact his DNA was on the mask." These issues, however, are for the jury to weigh along with the other evidence-including, for example, the fact that appellant had a mask and gloves at hand in July. No prejudice, therefore, arose from the admission of the DNA evidence. Appellant's fifth assignment of error is not well-taken.
 {¶ 29} Next, appellant argues in his third assignment of error that insufficient evidence supports his conviction and thereby violates his right to due process of law. We are required to construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find beyond a reasonable doubt the essential elements of the offense. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89. *Page 12 
 {¶ 30} R.C. 2911.11(A)(1) provides:
 {¶ 31} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 32} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another * * *."
 {¶ 33} In support of his argument, appellant argues that he was indicted as a principal offender in the language of R.C. 2911.11(A)(1), and no jury instructions were given as to complicity. See, e.g.,State v. Bray, 7th Dist. No. 04MA27, 2005-Ohio-2117, ¶ 2 (no error to instruct jury as to complicity when alleged in the indictment to be the principal.) Furthermore, appellant argues that no evidence or testimony positively placed him inside the Delgados' home, and the Delgados were unable to positively identify him as having been in the home. The state counters that circumstantial evidence, including his mask, tennis shoes, shorts, and physical build, all testified to by the Delgados, creates sufficient circumstantial evidence to place him in the home.
 {¶ 34} R.C. 2923.03(F) provides, "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." "[A] defendant charged with an offense may be *Page 13 
convicted of that offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." State v. Herring (2002), 94 Ohio St.3d 246, 251. However, appellant was not convicted of complicity, so any argument that appellant was wrongly convicted as the principal when he "only aided and abetted" is misplaced.
 {¶ 35} Appellant seems to argue that a conviction for complicity would be more supportable, and conviction as a principal offender unsupportable, because no witness was able to definitely place him inside the Delgados' residence and the Delgados were unable to positively tell which men were beating and kicking them. Taking the evidence as believed by the jury, however, sufficient evidence exists to find all elements of the offense. The Delgados testified to the presence of four men in their residence, and testified that all four men, at one point or another during their ordeal, joined in the actual and threatened physical harm. An eyewitness saw the men leave in a champagne colored Cadillac. An officer saw the Cadillac exit the Delgados' neighborhood. The Delgados' property, including Juan's wallet, was found inside the car. Inferences from this evidence reasonably give rise to a conclusion that any person found inside the car must have exited the residence after participating in the burglary and had harmed or threatened to harm the Delgados. This conclusion holds regardless of whether appellant actually or recently wore the same mask found inside the car. *Page 14 
 {¶ 36} Thus, direct evidence as to whether appellant was inside the residence or whether the Delgados could enumerate the specific acts of violence perpetrated by appellant is unnecessary. It is axiomatic that circumstantial evidence carries the same probative value as direct evidence. "[D]irect evidence of a fact is not required. Circumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." State v. Lott (1990), 51 Ohio St.3d 160, 167, quotingMichalic v. Cleveland Tankers, Inc. (1960), 364 U.S. 325, 330. In this case, the circumstantial evidence gives rise to the conclusion that appellant was among the perpetrators who entered the Delgados' home by force, committed theft or entered with the intent to commit theft, inflicted or attempted to inflict physical harm, and exited in the Cadillac which was later apprehended. Appellant's third assignment of error is not well-taken.
 {¶ 37} In his fourth assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. "The question for the reviewing court [in a manifest-weight claim] is `whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'"State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 77, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. The appellate court considers all of the evidence, sits as a "thirteenth juror," and decides whether a greater amount of credible *Page 15 
evidence supports a conviction such that the jury "clearly lost its way." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 38} We cannot conclude that the jury clearly lost its way. Even if we accepted appellant's prior arguments regarding the evidence, discarding that evidence, a greater amount of evidence supports the conviction. Given the chronology of events surrounding the Cadillac — the eyewitness' call to 911, the officer's arrival on the scene, and the apprehension of the Cadillac with appellant inside — the Cadillac contained persons who exited the Delgados' residence after committing aggravated burglary. Appellant's fourth assignment of error is not well-taken.
 {¶ 39} Appellant also claims that his trial counsel gave ineffective assistance. In order to establish ineffective assistance of counsel, an accused must show: (1) that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution; and (2) that counsel's deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687. Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not erred. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of syllabus.
 {¶ 40} Appellant points to his counsel's failure to object to the admission of the gun, the testimony concerning the gun's operability, and Cox's testimony regarding the DNA evidence. As found supra, this evidence did not work to appellant's prejudice; *Page 16 
therefore, appellant's counsel's failure to object did not prejudice his defense and was not deficient. Appellant's sixth assignment of error is not well-taken.
 {¶ 41} In his second assignment, appellant argues that the trial court violated his Sixth Amendment right to a jury trial when it made findings in support of the maximum sentence of ten years incarceration. On this point, appellant is correct; the trial court buttressed the imposition of the maximum sentence with factual findings made pursuant to R.C.2929.14(B), required at the time of his sentencing hearing by State v.Comer (2003), 99 Ohio St.3d 463, 2003-Ohio-4165. On February 27, 2006, the Ohio Supreme Court decided State v. Foster (2006), 109 Ohio St.3d 1,2006-Ohio-856, certiorari denied by State v. Foster, 127 S.Ct. 442, which declared certain portions of Ohio's sentencing laws unconstitutional as violative of a defendant's Sixth Amendment Right to a jury trial. Specifically, Foster held the following statutory sections unconstitutional: R.C. 2929.14(B), (C), (D)(2)(b), (D)(3)(b), and (E)(4); R.C. 2929.19(B)(2); and R.C. 2929.41(A). Foster also specifically abrogated Comer, and applied Apprendi v. New Jersey (2000),530 U.S. 466; Blakely v. Washington (2004), 542 U.S. 296; and UnitedStates v. Booker (2005), 543 U.S. 220. Foster must be applied to all cases "pending on direct review or not yet final," 2006-Ohio-856, ¶ 106.
 {¶ 42} Appellee argues that appellant cannot receive Foster's remedy of resentencing because his appeal was not pending on direct review whenFoster was announced, citing Morgan v. Eads, 104 Ohio St.3d 142,2004-Ohio-6110, syllabus, in support. Morgan held that an appellate court's consideration of an appeal's merits upon *Page 17 
an App.R. 26(B) reopening based on ineffective assistance of appellate counsel is not a part of the direct appeal. Since we granted appellant's App.R. 26(B) application for reopening on January 11, 2006, appellee argues that appellant's "direct" appeal was not pending whenFoster was announced on February 27, 2006. We find no merit in this argument, as we have granted applications pursuant to App.R. 26(B) on the basis of appellate counsel's failure to preserve a Blakely issue by filing a notice of appeal to the Ohio Supreme Court whileFoster was pending; if we find that Foster applies, the sentence is vacated upon the application and the appellant resentenced accordingly.State v. Washington, 6th Dist. No. F-05-001, 2006-Ohio-7000. Likewise, if, following our grant of an appellant's App.R. 26(B) application,Foster was decided, we have applied it. State v. Waite, 6th Dist. No. OT-04-051, 2006-Ohio-6176.
 {¶ 43} Appellant argues that upon his resentencing, he is entitled to a presumption of a minimum term of incarceration. Due toFoster, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. This argument is not well-taken. Appellant adds an argument that his resentencing would violate the Ex Post Facto Clause. Appellee correctly notes that this claim is not ripe for review, State v. Wood, 6th Dist. No. L-05-1420, 2006-Ohio-4910; State v. Lathan, 6th Dist. No. L-03-1188,2006-Ohio-2490, at ¶ 12. Even if it was ripe for review, however, we have held that the Ex Post Facto Clause is inapplicable to a resentencing pursuant to Foster. State v. Coleman, *Page 18 
6th Dist. No. S-06-023, 2007-Ohio-448. Because appellant is entitled to a new sentencing hearing pursuant to Foster's mandates, his second assignment of error is well-taken.
 {¶ 44} We also find merit in appellant's seventh assignment of error. The state concedes in its brief that no evidence supports the trial court's imposition of restitution in the amount of $15,000. At trial, the Delgados testified to the value of the items taken from the residence, but no actual evidence of the monetary value of the items was submitted.
 {¶ 45} "In an order of restitution, the amount of restitution must bear a reasonable relationship to the loss suffered. State v.Marbury (1995), 104 Ohio App.3d 179, 181; see, also, R.C. 2929.18(A)(1). Thus, it is held that restitution is limited to the actual loss caused by the defendant's criminal conduct for which he was convicted.State v. Brumback (1996), 109 Ohio App.3d 65, 82. There must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty. Id. at 83; State v. Warner (1990), 55 Ohio St.3d 31, 69." State v. King(Feb. 27, 1998), 6th Dist. No. WD-97-015.
 {¶ 46} Since only the Delgados' testimony and statements by the prosecution support the order of restitution, appellant's seventh assignment of error is well-taken.
 {¶ 47} For the foregoing reasons, appellant's conviction for aggravated burglary is affirmed. The judgment of conviction is reversed as to the imposition of ten years incarceration and the order of restitution. This matter is remanded for resentencing in *Page 19 
accordance with this decision and State v. Foster, supra, and for another hearing on the issue of restitution. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR. *Page 1