[Cite as *State v. Harmon*, 2013-Ohio-442.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0067** |
| JESSICA R. HARMON, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2011 TRC 16194.

Judgment: Reversed and remanded.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, and *Kristina Drnjevich,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Joseph C. Patituce*, and *Megan M. Patituce,* Patituce & Associates, L.L.C., 26777 Lorain Rd., Suite 708, North Olmsted, OH 44070 (For Defendant-Appellee).


DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals the June 20, 2012 Journal Entry of the Portage County Municipal Court, Ravenna Division, suppressing the result of a breath test performed on defendant-appellee, Jessica R. Harmon, using an Intoxilyzer 8000. The issue before this court is whether a trial court, exercising its evidentiary role as gatekeeper, may entertain a challenge to the results of a breath testing instrument where the Ohio director of health has approved such instrument for

determining the concentration of alcohol in a person's breath. For the following reasons, we reverse the decision of the court below.

{¶2} On December 9, 2011, the Ohio State Highway Patrol issued Harmon a traffic ticket, charging her with OVI, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a) (driving under the influence of alcohol) and (d) (driving with a prohibited breath alcohol concentration), and with a Tail Lights violation, a minor misdemeanor in violation of R.C. 4513.05(A).

{¶3} On December 12, 2011, Harmon entered a plea of "not guilty."

{¶4} On January 30, 2012, Harmon filed a Motion to Suppress Evidence, seeking the suppression of "[a]ny tests of defendant's coordination, sobriety, alcohol or drug level, including chemical tests"; "[a]ny observations and opinions of the police officer(s) who stopped defendant"; "[a]ny statements made by defendant"; and "[a]ny physical evidence obtained by the police." Harmon raised numerous grounds for the suppression of evidence, including, inter alia, that "the State of Ohio must demonstrate that this specific Intoxilyzer 8000 is admissible pursuant to *Daubert v. Merrell* [sic] *Dow Pharmaceuticals*[, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)]."

{¶5} On May 21, 2012, a hearing was held on the Motion to Suppress Evidence. Counsel for Harmon modified the Motion to Suppress by withdrawing portions of it "as it relates to the reason for the initial stop, basis of the field sobriety tests and the results of those field sobriety tests." Counsel for Harmon desired the hearing to go forward "as it relates to the Intoxilyzer 8000." It was counsel's belief that "the State of Ohio is required to put on a witness who can either explain to this Court, under Criminal Rule 702 and/or *Vega*, why this should be before the Court." The assistant prosecuting attorney responded that it was the State's position that it was not

necessary to present evidence on this issue. The municipal court took the matter under advisement.

{¶6}  On June 20, 2012, the municipal court issued a Journal Entry, ruling on Harmon's Motion. The court stated that it was "limit[ing] its review of Defendant's Motion to Suppress solely to the admissibility of a B[r]AC test from the Intoxilyzer 8000." The court determined that the issue before it was identical to the issue in "*State v. Johnson* (2012) decided January 6, 2012 in Portage County Municipal Court Case R 11 TRC 4090, unreported." Based on the "rationale and findings in *Johnson*," the court found "that Defendant's Motion to Suppress is well taken and is hereby granted," and ruled that the breath test results of the Intoxilyzer 8000 would not be admissible at trial. Without expressly dismissing the R.C. 4511.19(A)(1)(d) charge, the court ordered that the "remaining charges alleging a violation of R.C. 4511.19(A)(1)(a) and 4513.05 shall be set for trial."

{¶7}  On June 21, 2012, the State filed its Notice of Appeal.

{¶8}  On June 25, 2012, the municipal court stayed execution of its June 20, 2012 Journal Entry pending appeal.

{¶9}  On appeal, the State raises the following assignment of error:

{¶10}  "[1.] [The] Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶11}  The issue of whether a general attack on the accuracy/reliability of the Intoxilyzer 8000 has been previously decided by this court. *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585; *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584.

3

{¶12} While preliminary, *Daubert*-based challenges to the admissibility of breath test results are prohibited, the results of such tests are subject to a myriad of other challenges.

{¶13} When duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). The Ohio Supreme Court has affirmed that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *State v. Vega*, 12 Ohio St.3d 185, 189, 465 N.E.2d 1303 (1984). Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *State v. French*, 72 Ohio St.3d 446, 451-452, 650 N.E.2d 887 (1995) (in addition to requiring the State to demonstrate that "the bodily substance was analyzed in accordance with methods approved by the Director of Health, and that the analysis was conducted by a qualified individual holding a permit issued by the Director of Health", "[e]videntiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised").

{¶14} In the present case, Harmon challenged the breath test results of the Intoxilyzer 8000 on several grounds: that the State is required "to lay the foundation for the admission of these tests at trial by demonstrating conformity to the requirements of the Ohio Revised Code [and] the Ohio Administrative Code"; the "Defendant's breath

4

sample was not analyzed according to the operational checklist for the instrument used, and checklist forms recording the results were not retained as required by OAC 3701-53-02(C) and OAC 3701-53-01(A)"; and "Defendant's breath sample was not analyzed in accordance with OAC 3701-53-04(B) which states in plain language that all instruments listed in OAC 3701-53-02(A)(3) (The intox. 8000) must perform a dry gas control **before** and **after every subject test**."

{¶15} Under the statute and cases discussed above, these were valid challenges to the admissibility of breath test results and properly raised in a motion to suppress. The municipal court, however, granted Harmon's motion solely on the grounds that the State failed to produce evidence of the Intoxilyzer 8000's scientific reliability. In her appellate brief, Harmon contends the State's failure to produce evidence in response to any of her challenges to the admissibility of the breath test results is grounds for affirming the municipal court's decision. Given the circumstances of the present case, we disagree. At the suppression hearing, the State requested the court to "rule on the State's brief that was filed," which only addressed the necessity of introducing evidence to demonstrate the Intoxilyzer 8000's general reliability. The court's ruling was limited to this issue. Accordingly, on remand, it will be necessary for the court to hold another hearing to address the other issues raised in Harmon's Motion to Suppress, at which time, the State will have the opportunity to respond to Harmon's specific arguments.

{¶16} The sole assignment of error is with merit.

{¶17} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting Harmon's Motion to Suppress Evidence, is reversed,

5

and this cause is remanded for further proceedings consistent with this opinion.  Costs to be taxed against appellee.


MARY JANE TRAPP, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____


THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶18} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000.  Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director.  I, therefore, respectfully dissent.

{¶19} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time.  In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶20} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma,

breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

{¶21} The statute does not use the word "shall," which would mandate admission regardless of the circumstances. Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

{¶22} In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶23}** Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶24}** "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶25}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶26}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v.*

*Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶27}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶28}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general*." (Emphasis added.) *Id.* at 186.

**{¶29}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St. 3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

**{¶30}** Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for

9

both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶31} Breath tests are ""* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶32} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion*. *Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

10

**{¶33}** Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

**{¶34}** When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

**{¶35}** This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.

11