[Cite as *State v. Bergman*, 2013-Ohio-3073.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0124** |
| DENISE L. BERGMAN, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 08654.

Judgment:  Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266  (For Plaintiff-Appellant).

*Dennis Day Lager,* Portage County Public Defender, and *Mark A. Carfolo*, Assistant Public Defender, 209 S. Chestnut Street, Suite 400, Ravenna, OH  44266 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1}    The state of Ohio appeals from the September 26, 2012 judgment entry of the Portage County Municipal Court, Ravenna Division, granting Denise Bergman's motion to suppress in a drunken driving case.  The motion was directed against the admissibility of breath test results from the Intoxilyzer 8000.  We affirm.

{¶2}    In the early hours of June 17, 2012, Ms. Bergman was stopped on State Route 59  for driving without a right headlight.  Eventually, the officer issued Ms.

Bergman a ticket for operating her vehicle under the influence of alcohol ("OVI"), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a) and (d), and the headlight violation, R.C. 4513.14. A breath test done with the Intoxilyzer 8000 indicated she had a blood alcohol concentration of .097. Ms. Bergman pleaded not guilty to both charges.

{¶3} Ms. Bergman moved to suppress, raising the issue of whether the Intoxilyzer 8000 provides scientifically reliable results. Hearing was held August 25, 2012. The state declined to present any evidence that the Intoxilyzer 8000 is reliable; and, pursuant to its prior decision in *State v. Johnson*, Portage County M.C. No. R 2011 TRC 4090 (Jan. 6, 2012), *rev'd*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440,[1] the trial court granted the motion to suppress. The state certified that, without the results from the Intoxilyzer 8000 test, its case was too weak to proceed, Crim.R. 12(K), and timely noticed this appeal.

{¶4} The state assigns a single error:

{¶5} "Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶6} In support of this assignment of error, the state presents one issue for review:

{¶7} "Did the trial court err in determining that the State was required to present evidence to establish the scientific reliability of the Intoxilyzer 8000 machine as a threshold matter for the admissibility of test results from that machine?"

---

1.The opinion of this court reversing the trial court was filed February 8, 2013.

2

{¶8} We review a trial court's legal determinations at a suppression hearing de novo. *State v. Djisheff*, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶9} The state relies on *State v. Vega*, 12 Ohio St.3d 185 (1984). In that case, the court held: "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id.* at 186. The *Vega* court premised its decision on several considerations.

{¶10} First, the court cited to its prior holding in *Westerville v. Cunningham*, 15 Ohio St.2d 121, 123 (1968), regarding use of breath analysis machines in OVI cases, for the proposition that: "'such tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators.'" *Vega* at 186.

{¶11} Second, the court noted that the General Assembly confided discretion to determine proper methods of analyzing breath alcohol to the Director of Health, and that the director had designated the machine in question as appropriate. *Vega*, 12 Ohio St.3d at 186-187.

{¶12} Third, the court noted that under the version of R.C. 4511.19 then current, the results of a breath analysis exceeding the statutory level merely created a rebuttable presumption that the defendant was intoxicated, which did not prevent the defendant showing, through other evidence, that he or she was not impaired. *Vega*, 12 Ohio St.3d at 188-189.

3

**{¶13}** Based on this last point, it would appear that *Vega* is no longer good law. The Parma Municipal Court recently so found in *Parma v. Malinowski*, Parma M.C. No. 12TRC 03580 (April 22, 2013) (Spanagel, J.). As that court states:

**{¶14}** "The majority in *Vega* themselves set forth the (sic) in their own logic why *Vega* is no longer good law, when they stated:

**{¶15}** "'Not only does appellee's position fail to give recognition to the legislative determination, *it also misperceives the presumption and the effect of that presumption created by R.C. 4511.19.* The presumption created by R.C. 4511.19 is that the accused was under the influence of alcohol. 'The effect of the presumption is to eliminate the necessity of proof by the prosecution of the effect of alcohol on the individual when the level is within the range established by the presumption. *The statute does not create an absolute presumption, but only a rebuttable one* (* * *).'

**{¶16}** "*This presumption does not, contrary to appellee's arguments, change the presumption of innocence to one of guilt. It merely raises the rebuttable presumption that one was under the influence of alcohol.* Under the statute, *the accused may introduce any other competent evidence bearing upon the question* of whether he was under the influence of intoxicating liquor. (* * *) *There is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator.* See, e.g., *Cincinnati v. Sand (*1975), 43 Ohio St.2d 79, * * *. *Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed.* Since the *presumption is rebuttable* and the defendant may go forward with evidence, the '(* * *) (d)efendant cannot be heard to complain that the provisions of R.C. 4511.19 eliminate his presumption of innocence or hamper the

4

presentation of his defense.' *State v. Myers* [(1971), 26 Ohio St.2d [190,] 201, * * *. The presumption created by the scientific test is thus to be considered by the jury and the court along with the other evidence as to whether or not the accused was intoxicated. Whether the presumption was overcome by the evidence presented is a question of fact for the jury.' * * *

{¶17} "Examination of the majority decision itself clearly shows that they believed that the *rebuttable presumption* was able to be addressed by presenting other evidence, including limited attack on the machine result as another item of evidence. Today the test result is not a rebuttable presumption but a *conclusive presumption.* Conclusive presumptions have been previously found to be unconstitutional." (Citing *Sandstrom v. Montana*, 442 U.S. 510 (1979)). (Emphasis sic.) (Parallel citations omitted.) *Malinowski* at 8-9.

{¶18} This reasoning is persuasive. Conclusive presumptions being unconstitutional, *Vega* can no longer provide authority that attacks on the reliability of breath analysis machines cannot be made, since the law presently gives the results of such tests conclusive effect.

{¶19} However, an analysis of the applicable statutes, even within the context of *Vega*, does not lead to the conclusion that a trial court may not demand proof of the Intoxilyzer 8000's reliability.

{¶20} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, paragraph two of the syllabus (1987). A trial court's decision to exclude evidence will not be overturned absent an abuse of discretion. *State v. Benson*, 11th Dist. No. 2001-P-0086, 2002-

5

Ohio-6942, ¶7, citing *State v. Kinley*, 72 Ohio St.3d 491, 497 (1995). An abuse of discretion is no mere error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Id.* Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. *See e.g. State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

**{¶21}** R.C. 4511.19(D)(1)(b) states in part:

**{¶22}** "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation * * * [and] [t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." (Emphasis added.)

**{¶23}** The foregoing statute uses the word "may." "'The statutory use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary.'" *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001 Ohio App. LEXIS 5842, *16 (Dec. 21, 2001), quoting *Dorrian v. Scioto Conserv. Dist.*, 27 Ohio St.2d 102, 107 (1971). Thus, R.C. 4511.19(D)(1)(b) does not mandate

6

admissibility of the results of the breath test.  Rather, the statute vests the trial court with discretion in making a determination with respect to admissibility, notwithstanding approval from the director of health.  As Judge Wright of this court stated recently in a series of penetrating dissents:

**{¶24}** "R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results."  *State v. Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶38.[2]

**{¶25}** Thus, the statutory scheme does not establish the proposition advanced by the state: i.e., results of any breath analysis machine *must* be accepted at trial. Rather, the statutes provide that the Director of Health has sole authority to approve machines – but that the trial courts of Ohio have discretion to accept or reject the results generated by the machines so approved.  Further, even application of *Vega* does not mandate the result advanced by the state.  *Vega* prohibits blanket attacks on the reliability of breath analysis machines generally, and premises this upon the use of

---

2. *See also Johnson*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440; *State v. Schrock*, 11th Dist. No. 2012-P-0022, 2013-Ohio-441; *State v. Harmon*, 11th Dist. No. 2012-P-0067, 2013-Ohio-442; *State v. Funk*, 11th Dist. No. 2012-P-0071, 2013-Ohio-444; *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445;  *State v. Webb*, 11th Dist. No. 2012-P-0052, 2013-Ohio-541; *State v. Neice*, 11th Dist. No. 2012-P-0064, 2013-Ohio-542; *State v. Butler*, 11th Dist. No. 2012-P-0066, 2013-Ohio-543; *State v. Lucas*, 11th Dist. No. 2012-P-0070, 2013-Ohio-544; *State v. Pizzino*, 11th Dist. Nos. 2012-P-0079 and 2012-P-0080, 2013-Ohio-545; *State v. Kuntz*, 11th Dist. No. 2012-P-0082, 013-Ohio-546; *State v. McCune*, 11th Dist. No. 2012-P-0089, 2013-Ohio-547; *State v. Zoeckler*, 11th Dist. No. 2012-P-0092, 2013-Ohio-548; *State v. Tagliaferri*, 11th Dist. No. 2012-P-0094, 2013-Ohio-549; *State v. Hinton*, 11th Dist. No. 2012-P-0095, 2013-Ohio-550; *State v. Canino*, 11th Dist. No. 2012-P-0102, 2013-Ohio-551.

"'proper equipment.'" *Vega*, 12 Ohio St.3d at 186.  The question raised in this case is the reliability of the Intoxilyzer 8000 specifically.  A breath analysis machine could only be "proper equipment" if it *is* reliable.

**{¶26}**  As Judge Wright further noted in *Collazo*:

**{¶27}**  "In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b).  As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v. Revolution Software Inc.,* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45, * * * (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp*., 2000 U.S. Dist. LEXIS 10974, *8 (N.D. Ill. 2000) (The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶28}**  "Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶29}**  "'Substantive due process, (although an) ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty."  (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or

8

property must be impaired before the protections of substantive due process become available.' *State v. Small*, 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11, * * * (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F.2d. 1317, 1328 (6th Cir. 1989).

{¶30} "However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; '(substantive) * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence.' *Barefoot v. Estelle*, 463 U.S. 880, 931, fn. 10, * * *." (Parallel citations omitted.) *Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶41-44.

{¶31} As the Court of Appeals, Tenth Appellate District has observed:

{¶32} "Substantive due process prohibits the government from infringing upon fundamental liberty interests in any manner, regardless of the procedure provided, unless the infringement survives strict scrutiny; i.e., the government's infringement must be 'narrowly tailored to serve a compelling state interest.' *Reno v. Flores* (1993), 507 U.S. 292, 302, * * *." *In re M.D.*, 10th Dist. No. 07AP-954, 2008-Ohio-4259, ¶9.

{¶33} Case law indicates serious problems regarding the reliability of the Intoxilyzer 8000, which make it incumbent on trial courts to assure the reliability of its results, before allowing those results into evidence. In one case, plaintiff brought a federal action for violation of his Fourth Amendment rights, following his arrest for driving under the influence. *Briggs v. Holsapple*, D.Oregon Civil Case No. 08-6037-KI, 2009 U.S. Dist. LEXIS 11295, *1 (Feb. 11, 2009). Despite considerable indications on the field sobriety tests that the plaintiff was inebriated, his breath test on an Intoxilyzer 8000 resulted in a 0.000% BAC. *Id.* at *6. A state of Oregon expert testified *against* the reliability of the machine. *Id.* at *7. As stated by the district court:

{¶34} "Justin Lazenby, Forensic Scientist, Oregon State Police Toxicology Unit, has reviewed the facts of plaintiff's arrest and has concluded: (a) the Intoxilyzer 8000 underestimates actual BAC 84% of the time; (b) the Intoxilyzer 8000 will round all breath sample results below 0.010% down to 0.000%; (c) based on the alcohol consumption described by plaintiff in his deposition, plaintiff's BAC at the time of driving would be between 0.019% and 0.023%, * * *." *Id.* at *7-8.

{¶35} The state of Ohio does not have access to the "source code" for the Intoxilyzer 8000. *State v. Gerome, et al.*, Athens County M.C. Nos. 11TRC01909, 11TRC00826, 11TRC01734, and 11TRC02434, at 15 (June 29, 2011) (Grim, J.). As the *Gerome* court found, "In the ODH certification of this instrument, access to the source code was apparently not deemed necessary." *Id.*

{¶36} "The source code is the human readable format of the software that controls the operation of the Intoxilyzer 8000. In other words, the source code tells the Intoxilyzer 8000 how to calculate the numerical result, such as 0.08. *If the source code contains a mistake, then the result generated will be defective.*" *Montana v. Peters*, 2011 MT 274, 362 Mont. 389, 264 P.3d 1124, ¶4 (Mont. 2011). (Emphasis added.)

{¶37} Testimony has been elicited that such widely used devices as smart phones can interfere with the Intoxilyzer 8000 at frequencies it cannot detect. *Gerome* at 20-21.

{¶38} One of the liberty interests constitutionally protected by substantive due process is "freedom from bodily restraint and punishment." *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶14. Conviction under the OVI laws can result in deprivation of this liberty interest. Consequently, substantive due process demands that

10

such convictions be premised on proceedings and procedures which are constitutionally proper. The state has a compelling interest in preventing driving while impaired – but any procedure adopted under the OVI laws must be narrowly tailored to serve that interest. Presently, use of the Intoxilyzer 8000 does not meet this standard. It appears that the state itself is unaware of exactly *how* the machine functions, and generates its results. A criminal defendant is deprived of substantive due process when convicted using a procedure which is not merely unknown, but unknowable. Further, a criminal defendant's substantive due process rights cannot be overridden by a legislative enactment, and there is no need to interpret Ohio's laws regarding approval of breath analysis machines in a way that does. Similarly, the decision in *Vega*, premised on the use of "proper equipment," necessarily recognizes the duty of our trial courts to protect defendants' substantive due process rights by requiring them to insure that the equipment is proper. *Vega*, 12 Ohio St.3d at 186.

{¶39} For all the reasons foregoing, the state's assignment of error lacks merit. Given our disposition of the state's assignment of error, we find the cross assignments of error moot.

{¶40} The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed. It is the further order of this court that appellant is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.


THOMAS R. WRIGHT, J., concurs in judgment only with a Concurring Opinion.
TIMOTHY P. CANNON, P.J., dissents with a Dissenting Opinion

11

_____

THOMAS R. WRIGHT, J., concurs in judgment only with a Concurring Opinion.

{¶41} I concur in judgment only for the reasons stated in my dissenting opinion in *State v. Lucarelli*, 11th Dist. No. 2012-P-0065, 2013-Ohio-1606.

_____

TIMOTHY P. CANNON, P.J., dissenting.

{¶42} I respectfully dissent for the reasons stated in this court's previous opinions in numerous cases, including *State v. Johnson*, 11th Dist. No. 2012-P-0008, 2013-Ohio-440; *State v. Rouse*, 11th Dist No. 2012-P-0030, 2012-Ohio-5584; and *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583. The singular issue in these appeals is whether the state of Ohio must proceed with evidence establishing the general reliability of the Intoxilyzer 8000 when challenged by a defendant in a pretrial motion to suppress. As a result of the aforementioned decisions, the majority position of this court is clear: when a machine is put on the list of approved devices by the director of the Ohio Department of Health, the state is entitled, at a minimum, to a presumption that the equipment is generally reliable.

{¶43} In 1993, nine years after the decision in *State v. Vega*, 12 Ohio St.3d 185, the Ohio Supreme Court reaffirmed its stance on this issue in *State v. Yoder*, 66 Ohio St.3d 515. The *Yoder* Court stated:

{¶44} We are well aware that a person charged with a violation under R.C. 4511.19 faces serious consequences solely dependent upon the

12

results of a chemical test conducted by an instrument installed, controlled, maintained, regulated, checked and guarded by the state's law enforcement agencies. However, in promulgating this regulation, it must be presumed that the Director of Health acted upon adequate investigation and in full awareness of the perceived problems with RFI. We must defer to the department's authority and we may not substitute our judgment for that of the Director of Health.

{¶45} It is not suggested here that the presumption afforded to the director cannot be rebutted. However, because of the presumption of general reliability, it is necessarily incumbent on a defendant to produce evidence to overcome that presumption.

{¶46} Because there is a clear precedent with regard to the singular issue in this case, that precedent should be followed. The position taken by the minority of this court, albeit the majority in this opinion, will necessitate an en banc hearing by this court—a proceeding that can, and should be, avoided. Indeed, App.R. 26(A)(2)(a) cautions that en banc consideration "*is not favored* and will not be ordered *unless necessary* to secure or maintain uniformity of decisions within the district on an issue that is dispositive in the case in which the application is filed." (Emphasis added.)

{¶47} En banc should be a last resort, utilized only when it is not otherwise possible to determine the opinion held by the majority of the judges in the district regarding an issue that is dispositive of a case. In this case, because it is already clear where a majority of judges in this district stand on the dispositive issue, that is the precedent that should be followed.